**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-02522-REB

HENRY C. RENKEN,

      Applicant,

v.

RENE GARCIA, Warden,

      Respondent.

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

**Blackburn, J.**

      This matter is before me on the *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application") [#1][1] filed September 21, 2012, by Applicant Henry C. Renken.  On November 16, 2012, Respondent was ordered to show cause why the Application should not be granted.  In response to the show cause order, Respondent filed an Answer to Application for Writ of Habeas Corpus ("Answer") [#15] and Applicant filed a "Reply to Respondent's Answer to Application for Writ of Habeas Corpus" ("Reply") [#16].

      I must construe the papers filed by Applicant liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After reviewing the pertinent

---

[1] "[#1] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

portions of the record in this case including the Application, the Response, and the Reply, I conclude that the Application should be denied.

## I. BACKGROUND

Applicant is a prisoner in the custody of the United States Bureau of Prisons ("BOP"). He was convicted in the United States District Court for the Northern District of Illinois and is serving an aggregate 134-month sentence for bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and for brandishing a weapon during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *See United States v. Renken*, No. 02-cr-01099-1 (N.D. Ill. June 8, 2005). Applicant has a projected release date of October 3, 2014, via good conduct time release. ("Alarid Decl."), Ex. A at ¶ 3 [#15-1].

Applicant asserts that his due process rights were violated when his request for a twelve-month placement in a halfway house was not fully and objectively considered as provided for under the Second Chance Act ("SCA"). Applicant further asserts that his equal protection rights also are being violated because a "favored few inmates" have received placement in a halfway house without supporting objective criteria. Appl. at 3. As relief, Applicant seeks a court order directing Respondent to approve him for a twelve-month halfway house placement as provided for in the SCA.

## II. DISCUSSION

**A. 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)**

Two statutes govern the BOP's authority to place a prisoner in an RRC, namely, 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Generally, § 3621 allows the BOP to designate the place of a prisoner's incarceration during a term of imprisonment, while § 3624 allows placement in a Residential Re-entry Center ("RRC") or in-home confinement during the final months of a sentence. Pursuant to 18 U.S.C. § 3621(b), the BOP has

broad discretion to designate an appropriate and suitable center for the purpose of facilitating reentry. The BOP considers–

>(1) the resources of the facility contemplated;
>
>(2) the nature and circumstances of the offense;
>
>(3) the history and characteristics of the prisoner;
>
>(4) any statement by the [sentencing] court–
>
>>(A) concerning the purposes [of the prison sentence]; or
>>
>>(B) recommending a type of penal or correctional facility as appropriate; and
>
>(5) any pertinent policy statement issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)].

18 U.S.C. § 3621(b).

>In 2007, Congress passed the SCA, which states, in pertinent part:
>
>(1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
>(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>. . .
>
>(4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

18 U.S.C. § 3624(c).

Prior to the enactment of the SCA, § 3624(c) stated that under this provision, assignment to an RRC would "not [ ] exceed 6 months." The SCA granted the BOP discretion to place soon-to-be-released inmates into RRCs for longer periods of time. To
3

effectuate this additional discretion, the BOP issued two memoranda for staff to properly implement § 3624(c).

A Memorandum issued on April 14, 2008, addresses pre-release inmates.  In relevant part, this memorandum

> instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical timeframe limitations on pre-release community confinement . . . are no longer applicable, and must no longer be followed."  Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b).  However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."

*Garza v. Davis*, 596 F.3d 1198, 1202–03 (10th Cir. 2010) (discussing BOP's April 14, 2008 memorandum regarding SCA changes) (internal citations omitted).

The second BOP memorandum issued November 14, 2008, addresses inmate requests for transfer to RRCs when more than twelve months remain from their projected release dates (that is, non-prerelease inmates).  As relevant here, this memorandum states that upon the receipt of an inmate's request to be transferred to an RRC before his prerelease 12-month period, BOP staff must make an individualized determination of the inmate's eligibility for such a transfer based on the five factors set forth in § 3621(b).  *Id.* at 1203 (discussing BOP's November 14, 2008 memorandum regarding SCA changes).  The November 14, 2008 memorandum further states that " '[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs.' " *Id.*

4

In accordance with the SCA, the BOP also amended its applicable regulation to state:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

28 C.F.R. § 570.22 (2008).

Congress has granted the BOP considerable discretion in placing inmates. *See* 18 U.S.C. § 3621(b) (the BOP "may designate any available penal or correctional facility . . . that the BOP determines to be appropriate and suitable"). Nothing in the SCA indicates a Congressional intent to impose any limitations or restrictions on the BOP's authority or discretion in this regard. Accordingly, the Court may not find a statutory presumption that twelve months' RRC placement is required for most inmates. See Bun v. Wiley, 351 F. App'x 267, 268 (10th Cir. Oct. 27, 2009) (recognizing that the SCA "does not entitle prisoners to a twelve-month placement in an RRC"). Indeed, such a construction would be contrary to Congress' expressed intent for the BOP to retain its discretion on placement matters. *See* 18 U.S.C. § 3624(c)(4). Moreover, before passage of the SCA, courts repeatedly rejected arguments that the prior language authorizing prerelease custody entitled them to a particular amount of RRC placement. *See*, *e.g.*, *Zamarripa v. Peterson*, 105 F. App'x. 253, 254 (10th Cir. 2004) (quoting *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992)) ("Nothing in § 3624(c) indicates any intention to encroach upon the [BOP's] authority to decide where the prisoner may be confined during the pre-release period."). If Congress intended the SCA to constrain the BOP's discretion in placement decisions, it could have used express language to effectuate that change. Congress elected not to do so.

The Court's review, therefore, is limited to determining whether the BOP properly followed the statutory guidelines and related agency regulations and policies in deciding Applicant's RRC placement. The Court may not second guess the BOP's substantive decision. *See Fournier v. Zickefoose*, 620 F. Supp.2d 313, 318 (D. Conn. 2009). BOP's policy makes clear that an RRC placement beyond six months is warranted only "when there are unusual or extraordinary circumstances justifying such placement." *Garza*, 596 F.3d at 1203.

**B.  RRC Placement Decision**

Respondent first contends that the Application should be dismissed because the Court lacks jurisdiction to review the BOP's substantive decision to place Applicant at an RRC for 180 days. Answer at 2. Respondent concedes the Court, however, may determine whether the BOP exceeded statutory authority in deciding Applicant's RRC placement. *Id.* Respondent further contends the Application should be denied because the BOP complied with the SCA by applying the relevant statutory factors to determine a 180-day RRC placement was appropriate for Applicant. *Id.* Finally, Respondent contends that Applicant's equal protection claim is not cognizable in a habeas action, but even if the claim were cognizable, it is conclusory, unsupported, and does not state a claim for relief. *Id.* at 12-13.

In the Alarid Declaration attached to Respondent's Answer, Michelle Alarid, Applicant's case manager, states that she conducted an RRC placement review for Applicant on November 15, 2011, in keeping with the SCA and 18 U.S.C. §§ 3624(c)(6)(B) and (C) and 3621(b). Alarid Decl. at ¶ 7. Ms. Alarid states she considered the following factors, in accordance with § 3621(b): the resources of the facility contemplated; nature and circumstances of Applicant's offense; Applicant's institutional

history and characteristics, including his work performance, educational/vocational participation, Inmate Financial Responsibility Program (IFRP) participation, relevant prior record and disciplinary history; any statement by the sentencing court; any pertinent policy statement issued by the sentencing commission; and the inmate's resources including family support, life skills, community resources, financial resources, general job skills, and release residence.  *Id.* at ¶ 8.  Ms. Alarid further states that upon evaluating this information, she recommended that 180 days is sufficient time to assist Applicant with his re-entry needs, including a search for employment and reintegration into the community. *Id.* at ¶ 9.  She found no compelling or extraordinary circumstances to justify RRC placement beyond six months.  *Id.*  Applicant was notified of the decision on November 16, 2011.  *Id.*

Applicant asserts a twelve-month placement is required because on release he will be burdened with being an older ex-offender seeking employment in a difficult job market and poor economy, especially in Chicago were he will be placed.  Appl. at 3. Applicant further asserts that FCI staff should have contacted the Illinois State Job Service, the Probation Department, and other agencies to obtain specific job market information to assist in the decision to only authorize a 180-day RRC placement.  *Id.*  Applicant also asserts that his wife died in March 2012 and that his home is being foreclosed, which has "shattered" his community support system, but his new case manager will not reconsider his RRC placement.  Reply at 2.  Applicant also contends that he has met all of the requirements for an extended RRC placement because while being incarcerated he has worked, participated in programming, and stayed out of trouble.  *Id.*

On review of the specific criteria used by Ms. Alarid to determine Applicant's placement, the Court finds that the BOP's designation of Applicant for approximately six

7

months of pre-release RRC placement was an appropriate decision, was within the scope of the BOP's statutory authority, and did not deprive Applicant of his due process rights. *See Radick v. Federal Bureau of Prisons*, No. 11-cv-00298-DME, 2011 WL 2692951 at *3 (D. Colo. July 11, 2011); *Henderson*, 2010 WL 4627802 at **2-3.

Ms. Alarid considered the statutory factors stated in 18 U.S.C. § 3621(b) and determined Applicant's RRC placement on an individualized basis. She found that since 1979, aside from his incarceration, which is from February 15, 2005, when his bond was revoked and he was remanded to the custody of the U.S. Marshal, *see United States v. Renken*, No. 02-cr-01099-1, ECF No. 118 ((N.D. Ill. Feb. 15, 2005), to the present, Applicant resided in Chicago and had a social network of friends and acquaintances in the Chicago area. Alarid Decl. at 4. Ms. Alarid did acknowledge the passing of Applicant's wife, but also found that he communicates with his family through weekly electronic mail messages, telephone calls, and letters. *Id.* at 4 and 8. Applicant does not deny that he was a longtime resident of Chicago prior to his incarceration, that he has a social network of friends and acquaintances, or that he communicates with his family weekly.

Applicant further does not deny the following findings of Ms. Alarid's. While housed at the Federal Correctional Institution in Englewood, he has worked in the electronics test lab at the prison's drafting department and in the paint shop and has been an education department orderly. *Id.* at 7. Applicant has worked as a communications technician and volunteer firefighter in the past and has attained a college degree. *Id.* at 6-7. Applicant also has completed his obligation under the Inmate Financial Responsibility Plan and has completed the nonresidential drug abuse treatment program. *Id.* at 6. Applicant also has had sufficient deposits to his inmate account, even after his wife passed, which include, payroll, donations, release funds, and gifts. *Id.* at 7. From April to October 30, 2012, he

received over $500. *Id.*

A finding for a longer RRC placement is based on whether three factors are rated high. These factors include: (1) risk for recidivism; (2) successful participation in or completion of programming opportunities; and (3) need to establish community support system. ("June 24, 2010 Memo."), Ex. B at 6 [#15-2]. All three factors should be rated high to justify a longer RRC placement. Based on Ms. Alarid's findings the Court finds no basis for rating the first and third factor high, contrary to Applicant's suggestion. Therefore, the Court finds no extraordinary circumstances exist and a twelve-month RRC placement is not merited. As a result, Applicant's due process claim lacks merit and will be denied.

## C. Equal Protection/Other Inmates

Respondent asserts that Applicant's equal protection claim is not cognizable under 28 U.S.C. § 2241, and even if it is cognizable, the claim lacks merit. Respondent contends that the claim is conclusory, unsupported, and fails to meet basic pleading standards as required by *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In his Reply, Applicant argues that his equal protection claim is conclusory and unsupported because he does not have access to data regarding other inmate placements, and he can only state what he has observed and been told.

Applicant's inability to access the prison's data is no excuse for asserting conclusory and unsupported claims. Applicant's equal protection claim, therefore, fails because he does not circumstantiate what factors were improperly considered by the BOP in his RRC placement decision that were not used by the BOP in considering other inmates for RRC placement. *See generally City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–40 (1985) (explaining that the Equal Protection Clause "is

9

essentially a direction that all persons similarly situated should be treated alike."). As a result, the claim lacks merit and will be denied.

### III.  CONCLUSION

Based on the above findings, Applicant's claims lack merit and must be denied.

### IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [#1] filed September 21, 2012, by Applicant Henry C. Renken is **DENIED**; and

2. That this case is **DISMISSED**.

Dated May 22, 2013, at Denver, Colorado.

                                        **BY THE COURT:**

                                        */s/ Robert E. Blackburn*
                                        Robert E. Blackburn
                                        United States District Judge